

# NUMBER 13-14-00259-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**TEXAS DEPARTMENT OF
STATE HEALTH SERVICES,**                                                    **Appellant,**

**v.**

**LAURA GONZALEZ,**                                                                    **Appellee.**

## On appeal from the County Court at Law No. 2
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Rodriguez**

In this personal injury suit brought by appellee Laura Gonzalez incident to a car

accident, appellant Texas Department of State Health Services (DSHS) challenges the

trial court's denial of its plea to the jurisdiction.  By two issues, DSHS argues that the trial

court erred in denying its plea because it did not have the requisite notice under the Texas

Tort Claims Act (TTCA) and there was no use of a motor vehicle by DSHS such that its immunity was waived. We reverse and render.

## I. Background

In her petition, Gonzalez alleged the following. On December 1, 2009, Gonzalez was involved in a four-car pile-up on the eastbound-side of Highway 83 in McAllen, Texas. Gonzalez was traveling directly behind Odwin Pena, who "lost control of his vehicle and collided with the concrete barrier dividing" the highway. As Gonzalez slowed her vehicle in response, a vehicle three cars behind Gonzalez's vehicle that was driven by Fernanda Olivarez rear-ended a vehicle driven by Albert Ramos, a DSHS employee. Ramos's vehicle was then pushed into Eluid Morales's vehicle, and Morales's vehicle then rear-ended Gonzalez's vehicle.[1]

Gonzalez alleged, as to all defendants, that she suffered "extensive physical and emotional injuries as a result of the collision." As to DSHS, Gonzalez also claimed that it was responsible for Ramos's negligent operation of his vehicle because Ramos was acting within the course and scope of his employment at the time of the accident. Gonzalez alleged that Ramos was negligent in "[f]ailing to keep a proper lookout"; "[f]ailing to timely apply his brakes so as to avoid a collision"; "[f]ailing to maintain a clear and reasonable distance"; "[o]perating his motor vehicle at a rate of speed that was greater than would have been operated by a person of ordinary prudence under same or similar circumstances"; "[t]aking faulty evasive action"; and "[f]ailing to operate the vehicle in a reasonably prudent or responsible manner." Gonzalez claimed that her injuries were

---

[1] Gonzalez also sued each individual involved in the accident—Morales, Olivarez, and Ramos—but none are party to this appeal.

proximately caused by Ramos's actions.

DSHS filed a plea to the jurisdiction, arguing that the State's sovereign immunity had not been waived because (1) Gonzalez failed to provide DSHS with the notice required in the TTCA, and (2) there was no use of a motor vehicle. DSHS attached as evidence to its plea: the police report from the accident, which attributed no fault to Ramos; a date-stamped copy of Gonzalez's claim letter and the return-receipt card, which showed that DSHS received Gonzalez's written notice of claim on June 3, 2010; excerpts from Ramos's deposition, in which he described the details of the collision; and the affidavit of Alice Garrison, an employee of DSHS's General Counsel's office. In her affidavit, Garrison stated that she has "the duty and responsibility of investigating, reporting and evaluating all tort claims asserted against [DSHS] and its employees" and that

> [o]n December 11, 2009, I reviewed a copy of the McAllen Police Department's Crash Report of the December 1, 2009 accident involving our employee, Alberto Ramos[;] however, that crash report does not indicate that Laura Gonzalez was blaming Mr. Ramos or DSHS for the accident and the reporting McAllen police officer does not indicate in this crash report that Mr. Ramos or DSHS caused or partly caused any part of this accident involving Laura Gonzalez. . . .

> I am also familiar with the title and duties of Scott Omay and Jesus Rivera at the time of the accident on December 1, 2009. Mr. Omay was Alberto Ramos'[s] supervisor and Mr. Rivera was in charge of the department's vehicles. Neither Mr. Omay or Mr. Rivera had the responsibility to receive, investigate or process tort notices of claims.

Gonzalez responded to DSHS's plea, arguing that a genuine issue of material fact existed as to DSHS's notice and whether Ramos's use of the vehicle caused Gonzalez's injuries. Gonzalez attached evidence to her response, including, in relevant part, excerpts from Ramos's deposition. In those excerpts, Ramos testified that immediately

3

following the collision, he exited his vehicle and began taking photographs of the damages to his vehicle with his work cell phone. He testified that he then called his supervisor, Scott, and Rivera, the person in charge of DSHS's vehicles in the area, to report the accident.

After a hearing, the trial court denied DSHS's plea. This accelerated, interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. §. 51.014(a)(8) (West, Westlaw through 2013 3d C.S.) (allowing a governmental unit to appeal a denial of a plea to the jurisdiction).

## II. Standard of Review

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.—Corpus Christi 2004, no pet.). Subject matter jurisdiction is a question of law; therefore, an appellate court reviews de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam); *Morris*, 129 S.W.3d at 807. When a trial court's decision concerning a plea to the jurisdiction is based on the plaintiff's pleadings, we accept as true all factual allegations in the pleadings to determine if the plaintiff has met its burden to plead facts sufficient to confer jurisdiction on the court. *Dallas Area Rapid Transit v.*

4

*Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Morris*, 129 S.W.3d at 807. A plea to the jurisdiction may be granted without allowing the plaintiff to amend if the pleadings affirmatively negate the existence of jurisdiction. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Ramirez*, 74 S.W.3d at 867.

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. After the defendant "asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Miranda*, 133 S.W.3d at 228. This standard "generally mirrors" that of a traditional motion for summary judgment. *Id.* We take as true all evidence favorable to the non-movant and indulge every reasonable interest and resolve any doubt in favor of the non-movant. *Id.* at 228.

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Id.* at 227–28.

### III. Applicable Law

The Texas Supreme Court has long recognized that sovereign and governmental immunity, unless waived, protect the State of Texas and its subdivisions from lawsuits for damages, absent legislative consent to sue. *See id.* at 224; *Morris v. Tex. Parks & Wildlife Dep't*, 226 S.W.3d 720, 725–26 (Tex. App.—Corpus Christi 2007, no pet.). "The

[TTCA] provides a limited waiver of sovereign immunity." *Miranda*, 133 S.W.3d at 224 (citations omitted). Section 101.021 of the TTCA waives immunity in only three scenarios: (1) negligent operation or use of a motor-driven vehicle or equipment by a state employee; (2) negligent use of tangible personal property by a state employee, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) (West, Westlaw through 2013 3d C.S.); and (3) premises defects, *see id.* § 101.021(2). Gonzalez's cause of action in this case is one for negligent use or operation of a motor vehicle by a DSHS employee.

The TTCA also includes a notice provision, with which claimants are required to comply to confer jurisdiction on the trial court. *See id.* §101.101 (West, Westlaw through 2013 3d C.S.); TEX. GOV'T CODE ANN. §311.034 (West, Westlaw through 2013 3d C.S.) ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *see also Educ. Serv. Ctr., Region II v. Marikudi*, No. 13-09-00371-CV, 2010 WL 1254603, at *3 (Tex. App.—Corpus Christi Apr. 1, 2010, no pet.) (mem. op.) ("Notice under section 101.101 is jurisdictional and, thus, absolutely required before a plaintiff can file suit."). Section 101.101 provides that a governmental entity "is entitled to receive notice of a [TTCA] claim against it . . . not later than six months after the day that the incident giving rise to the claim occurred"; that notice must "reasonably describe . . . (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." TEX. CIV. PRAC. & REM. CODE ANN. §101.101(a). However, this notice requirement does "not apply if the governmental unit has actual notice that . . . the claimant has received some injury . . . ." *Id.* § 101.101(c).

## IV. Discussion

By its first issue, DSHS argues that the trial court erred in denying its plea to the

jurisdiction because it did not have the notice of Gonzalez's claims required under the statute. DSHS argues both that Gonzalez's formal written notice to DSHS was untimely and that it had no actual notice of Gonzalez's injuries.

## A. Written Notice—Section 101.101(a)

It is undisputed that DSHS received Gonzalez's written notice of claim on June 3, 2010. This was two days past the deadline prescribed by the statute; the six-month deadline after Gonzalez's December 1, 2009 accident would have been June 1, 2010. In her response to DSHS's plea and now on appeal, Gonzalez argues that her written notice should be considered timely because she mailed it on May 28, 2010; in short, Gonzalez argues that the "mailbox rule" saves her from the deadline. But the "mailbox rule" is inapplicable here.

First, we note that the statute expressly provides that the governmental entity must "*receive*" notice of the plaintiff's claim within six months of the incident. *Id.* § 101.101(a) (emphasis added). It is undisputed that DSHS did not receive Gonzalez's notice of claim until two days after the deadline.

Moreover, the "mailbox rule" to which Gonzalez refers is embodied in rules of civil procedure 5 and 21a, which provide that court filings and service of process will be considered timely accomplished if they are placed in the mail to the proper clerk or party by the date of the relevant deadline. *See* TEX. R. CIV. P. 5, 21a. The rules of civil procedure "shall govern the procedure in the justice, county, and district courts of the State of Texas in all actions of a civil nature . . . ." TEX. R. CIV. P. 2. The notice required by section 101.101 of the TTCA is not a document required to be filed in court. Thus, we cannot conclude that the "mailbox rule"—i.e., rules 5 and 21a—apply to Gonzalez's

7

notice of claim in this case. As such, she failed to provide timely written notice to DSHS, so the question remaining is whether DSHS had actual notice.

**B.   Actual Notice—Section 101.101(c)**

DSHS argues that it did not have actual notice, as contemplated by section 101.101(c), because the evidence attached to its plea to the jurisdiction shows that it had no subjective awareness of its fault before the June 1, 2010 deadline. Gonzalez responds that she created a fact issue as to actual awareness; she points to evidence that Ramos, the DSHS employee driving the car involved in the pile-up, immediately notified his boss and the vehicle supervisor of the accident and used his work cell phone to take pictures of the accident. Gonzalez argues that, based on this evidence, "[r]easonable minds may differ" as to whether Ramos's actions provided DSHS with actual notice.

Under the TTCA, actual notice to a governmental unit requires the governmental unit's:  (1) knowledge of an injury; (2) subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury; and (3) knowledge of the identity of the parties involved. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 548–59 (Tex. 2010) (citing *Tex. Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 344–48 (Tex. 2004); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)). "Fault, as it pertains to actual notice, is not synonymous with liability; rather it implies responsibility for the injury claimed." *Id.* at 550. Although actual notice is a fact question when evidence is disputed, in some instances, actual notice can be determined as a matter of law. *See Simons*, 140 S.W.3d at 348; *see also Marikudi*, 2010 WL 1254603, at *7.

8

"Actual notice may be imputed to the governmental entity by an agent or representative who receives notice of the [foregoing] elements and who is charged with a duty to investigate the facts and report them to a person of sufficient authority." *Univ. of Tex. Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.3d 750, 755 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339–40 (Tex. App.—San Antonio 2010, no pet.)); *see also Marikudi*, 2010 WL 1254603, at *4 ("If an agent or representative who received notice of the accident had a duty to gather facts and report, actual notice can be imputed to the governmental unit."). In other words, "[a]ctual notice [] is not limited to only a particular government official or employee, such as a director of risk management . . . ." *McQueen*, 431 S.W.3d at 755 (citations omitted).

Nonetheless, "merely investigating an accident is insufficient to provide actual notice." *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (citations omitted). More specifically,

> It is not enough that a governmental unit should have investigated an incident . . . , or that it did investigate, perhaps as part of routine safety procedures, or that it should have known from the investigation it conducted that it might have been at fault. If a governmental unit is not subjectively aware of its fault, it does not have the same incentive to gather information that the statute is designed to provide, even when it would not be unreasonable to believe that the governmental unit was at fault.

*Cathey*, 140 S.W.3d at 347–48. In the end, "'[a]ctual notice' under [section 101.101] . . . mean[s] that knowledge which the governmental unit would have had if the claimant had complied with the formal notice requirement." *Bourne v. Nueces Cnty. Hosp. Dist.*, 749 S.W.2d 630, 632 (Tex. App.—Corpus Christi 1988, writ denied); *see also Muniz v. Cameron Cnty.*, No. 13-10-00689-CV, 2012 WL 1656326, at *5 (Tex. App.—

9

Corpus Christi May 10, 2012, pet. denied) (mem. op.) (same).

Here, Garrison, the employee in the general counsel's office charged with investigating, reporting, and evaluating tort claims against DSHS, stated in her affidavit that she first became aware of the accident on December 11, 2009, when she received and reviewed a copy of the police accident report. But that report did not attribute any fault to Ramos, DSHS's employee.[2] None of the facts before Garrison showed that Ramos was responsible for Gonzalez's injuries; thus, DSHS could not have had subjective awareness of its fault, if any, at this point. *See Estate of Arancibia*, 324 S.W.3d at 548–49; *see also Carbajal*, 324 S.W.3d at 539 ("When a police report does not indicate that the governmental unit was at fault, the governmental unit has little, if any, incentive to investigate its potential liability because it is unaware that liability is even at issue."). From this, we conclude that DSHS met its burden of showing that the trial court lacked subject-matter jurisdiction by attaching evidence to its plea showing that it did not have actual notice of its potential fault in the accident that caused Gonzalez's injuries. *See Miranda*, 133 S.W.3d at 228.

Gonzalez argues that Ramos's testimony—that immediately following the accident, he took pictures of the damage to his vehicle and informed his direct supervisor, Scott, and the person in charge of DSHS's local vehicles, Rivera, about the accident— raises a fact issue as to DSHS's actual notice. Even taking this evidence as true, as we must under the standard of review, *see id.*, we disagree that it shows imputed actual

---

[2] We have reviewed the police report, and the section assigning fault was left blank. In other words, the investigating officer did not attribute fault to any party involved in the accident. Moreover, the police report confirms that Ramos's vehicle never impacted Gonzalez's vehicle.

notice. *See McQueen*, 431 S.W.3d at 755. Gonzalez presented no evidence that Ramos, Scott, or Rivera were charged with the duty of investigating the incident. Rather, the only employee shown in the evidence to have such a duty was Garrison, who, as discussed above, stated that the only information she had before her was the police accident report which showed that Ramos was not at fault. And even assuming that Ramos, Scott, and Rivera had a duty to gather facts and report the accident, there is no evidence that the facts gathered that day would have lead those parties to conclude that Ramos might be at fault. In his deposition testimony, Ramos stated that he only took pictures of the damage to his vehicle. And Gonzalez produced no further evidence about the facts that were communicated to Scott and Rivera.[3] From the evidence in the record, we cannot conclude that Ramos's cursory investigation at the scene indicates that he, Scott, or Rivera had subjective awareness of any fault by Ramos in the accident that would have been imputable to DSHS; in other words, the facts gathered that day would not have given them the knowledge they would have had had Gonzalez complied with the formal notice requirement. *See Carbajal*, 324 S.W.3d at 538; *Cathey*, 140 S.W.3d at 347–48; *Bourne*, 749 S.W.2d at 632.

Based on the record before us, we are able to conclude, as a matter of law, that DSHS lacked actual notice of Gonzalez's claims before the six-month deadline expired on June 1, 2010. *See Simons*, 140 S.W.3d at 348. Gonzalez's evidence failed to raise an issue of material fact on this issue. *See Miranda*, 133 S.W.3d at 228. Because

---

[3] We note that our holding in this case is limited to the facts evident from the record before us. In short, our analysis is constrained by the evidence gathered and presented by Gonzalez in response to DSHS's plea.

11

DSHS had no notice of Gonzalez's claim—formal or actual—before the deadline, its immunity from Gonzalez's TTCA claims was not waived, and the trial court lacked jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE § 101.101; *see also Marikudi*, 2010 WL 1254603, at *3. The trial court erred in denying DSHS's plea to the jurisdiction. We sustain DSHS's first issue.[4]

## V. Conclusion

We reverse the trial court's order denying DSHS's plea. And because the pleadings and evidence before us affirmatively negate the existence of jurisdiction, we render judgment dismissing Gonzalez's claims against DSHS. *See Brown*, 80 S.W.3d at 555; *Ramirez*, 74 S.W.3d at 867.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 18th
day of December, 2014.

---

[4] Because our resolution of DSHS's first issue is dispositive of the appeal, we do not reach its second issue. *See* TEX. R. APP. P. 47.1.

12